IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE K. NEIMAN, and KENNETH M. NEIMAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 13 C 8944 |
| CHASE BANK, USA, N.A., | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

JAMES F. HOLDERMAN, District Judge:

On December 16, 2013, Janice K. Neiman and Kenneth M. Neiman (collectively,

"Plaintiffs") filed a three-count complaint ("Complaint" or "Compl.") against Chase Bank, USA,

N.A. ("Chase") purporting to allege violations by Chase of the Fair Credit Billing Act, 15 U.S.C.

§ 1666 *et seq.* (Count I, "FCBA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

(Counts II and III, "FCRA"). (Dkt. No. 1.)

Before the court is Chase's "Motion to Dismiss Plaintiffs' Complaint" (Dkt. No. 9,

"Motion to Dismiss"), accompanied by a supporting memorandum (Dkt. No. 11, "Def's Mem.").

Chase seeks dismissal under Rule 12(b)(6) and argues that Count I must be dismissed as being

time-barred, or alternatively, for failing to allege billing errors under the FCBA. (Def's Mem. at

5-13.) Chase, additionally, asserts that Counts II and III must be dismissed, because Plaintiffs

failed to allege that any credit reporting agency notified Chase of the alleged billing errors, as

required under the FCRA. (*Id.* at 13-14.)

For the reasons set forth below, Chase's Motion to Dismiss is granted in part and denied in part as follows: Count I's allegations concerning the failure to acknowledge, to investigate, and to provide an explanation and documentary evidence for the alleged $12,000 charge billing error are time-barred and dismissed with prejudice; Count I's allegations concerning Chase's failure to send monthly statements are also dismissed but without prejudice; Count I's contentions concerning Chase's attempts to collect and close the account containing this billing error may remain pending; finally, Counts II and III are dismissed without prejudice as explained below.

## THE COMPLAINT'S ALLEGATIONS

Plaintiffs "entered into a revolving credit card agreement for personal and/or familial purposes" with Chase on May 1, 2003. (Compl. ¶ 6, Ex. A.) On July 19, 2012, Plaintiffs incurred a $12,000 charge from a private doctor's office in Fort Myers, Florida known as "Florida Incisionless" ("the Merchant"), which was reflected on Plaintiffs' monthly statement ending on August 10, 2012. (*Id.* ¶ 11, Ex. B.) Although the Complaint alleges that Plaintiffs' "charge plate was never presented" to the Merchant (*Id.* ¶ 14), the Complaint does not allege that Plaintiffs did not purchase services from the Merchant. The Complaint, instead, asserts that Plaintiffs notified the Merchant on August 15, 2012 and Chase on August 20, 2012 that the $12,000 charge was a billing error. (*Id.* ¶¶ 12, 15, 17.)

The Complaint alleges the following. Chase failed to acknowledge receiving Plaintiffs' notice (*id.* ¶ 13), but later said it would investigate the charge and any payment by Plaintiffs would be considered without prejudice to Plaintiffs' rights (*id.* ¶ 16). Chase additionally agreed that any payment by Plaintiffs in the meantime "would trigger a credit balance by the amount of

2

the disputed payment." (*Id.*)  Plaintiffs, relying on this agreement, paid $14,765.16 to their account on August 30, 2012.  (*Id.* ¶ 18.)

On September 20, 2012, Plaintiffs, again, notified Chase of the same billing error on the monthly statement ending on September 10, 2012.  (*Id.* ¶ 21, Ex. C.)  Despite Plaintiffs' $14,765.16 payment, this September statement showed a due balance of $4.72, instead of a credit balance of $12,000.  (*Id.*)  Chase, again, failed to acknowledge its receipt of this written notice and failed to provide copies of documentary evidence of the disputed charge.  (*Id.* ¶ 22.) Plaintiffs did not receive any monthly statements for the next two billing cycle periods, September 11, 2012 to October 10, 2012 and October 11, 2012 to November 10, 2012.  (*Id.* ¶ 23.)

On January 15, 2013, Plaintiffs notified Chase that the same billing error appeared on their monthly statement ending on December 10, 2012.  (*Id.* ¶¶ 28-29.)  This December statement showed that Chase refunded the entire $14,765.16 amount Plaintiffs previously paid on August 30, 2012 for the $12,000 charge and debited $740.00 from Plaintiffs' bank account.  (*Id.* ¶¶ 30-34, Ex. D.)  Chase continued to fail to investigate the underlying billing error and failed to provide the requested documentary evidence.  (*Id.* ¶¶ 35-39.)  Chase, without notice to Plaintiffs, closed Plaintiffs' account containing the above billing errors after Chase collected the $740.00 and applied this amount toward the $12,000 charge.  (*Id*. ¶¶ 40-41.)

Chase also provided incorrect credit information about Plaintiffs to credit reporting agencies which damaged and continues to damage Plaintiffs' credit ratings.  (*Id.* ¶¶ 49-50, 63-64.)

## LEGAL STANDARD

In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). Furthermore, "a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Titus v. Ill. Dep't of Transp.*, 828 F. Supp. 2d 957, 966 (N.D. Ill. 2011) (Castillo, J.) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even under this liberal standard, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997)).

Under the Fed. R. of Civ. P. 8(a)(2), a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole*, 634 F.3d at 903 (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>ANALYSIS</u>

**I. Count I: Alleged Violations of FCBA, 15 U.S.C. § 1666**

*A. Section 1666 Claims*

Section 1666 is a subsection of the Truth in Lending Act ("TILA") and "specifies the procedures and obligations of both the creditor and the obligor with regards to billing errors on credit card statements[.]" *In re Thomas*, 382 B.R. 449, 453 (N.D. Ill. 2007).

Section 1666(a) sets out the statutory duties and timeframe for dealing with a billing error as defined by § 1666(b). In order to trigger the creditor's statutory duties under § 1666(a), the obligor must send the creditor "a written notice" of the alleged billing error. 12 C.F.R. § 226.13(b)(1); *see also* § 1666(a)-(b). If the obligor fails to send the written notice within 60 days of the creditor's transmission of a statement with the error, the creditor's duties under § 1666(a) are not triggered. *Hill v. Chase Bank USA, N.A.*, No. 07-CV-82, 2010 WL 107192, at *6 (N.D. Ind. Jan. 6, 2010) ("Without a valid and timely notice of billing error, there's no duty to comply with § 1666(a)(A) and (B), and no violation of those sections.").

If the obligor sends the written notice within the requisite 60-day timeframe, § 1666(a) "imposes two separate obligations upon the creditor." *Am. Express Co. v. Koerner*, 452 U.S. 233, 236-37 (1981); *see also* § 1666(a). First, "[w]ithin 30 days" after receipt of the written notice, the creditor must "send a written acknowledgment that it has received the notice." *Id.* Second, "within 90 days or two complete billing cycles, whichever is shorter" after receipt of the written notice, "the creditor must investigate the matter and either make appropriate corrections in the obligor's account or send a written explanation of its belief that the original statement sent to the obligor was correct." *Id.*

Sections 1666(c) and 1666(d) impose additional restrictions on a creditor's ability to collect the alleged billing error and close the account containing the alleged billing error while the error is still in dispute.  §§ 1666(c)-(d); *see also Gray v. Am. Exp. Co.*, 743 F.2d 10, 14 (D.C. Cir. 1984) (stating that pursuant to § 1666(c), the cardholder "need not pay the amount in dispute until the card issuer has complied with § 1666," and that pursuant to § 1666(d), the card issuer "may not restrict or close an account due to a [cardholder's] failure to pay a disputed amount until the [card issuer] has sent the written explanation required by [§ 1666(a)]").

Plaintiffs' Complaint alleges three categories of violations: (1) alleged violations of § 1666(a) concerning the $12,000 charge billing error,  (Compl. ¶¶ 5-22, 24-39); (2) alleged violations of § 1666(a) concerning the failure to send monthly statements, (*id.* ¶ 23); and (3) alleged violations of §§ 1666(c) and 1666(d) for collecting from and closing the account impacted by the $12,000 billing error, (*id.* ¶¶ 40-41).

## B.  *The $12,000 Charge Billing Error*

### 1.  Statute of Limitations

Section 1666 has a one-year statute of limitations. 15 U.S.C. § 1640(e); *Durham v. Loan Store, Inc.*, No. 04 C 6627, 2006 WL 3422183, at *4 (N.D. Ill. Nov. 27, 2006) (Coar, J.) ("[A]ll TILA actions, unless otherwise noted, must be brought within one year from the date the violation occurred.").  The one-year statute of limitations begins to run "when the creditor fails to satisfy its compliance duties within the requisite time frame." *Hill*, 2010 WL 107192, at *7 (citations omitted).

Here, Plaintiffs allege that they first notified Chase of the $12,000 charge billing error on August 20, 2012.  (Compl. ¶ 17.)  Chase then had 30 days to acknowledge the notice, and two billing cycles of 30 days each or 90 days, whichever is shorter, to investigate the alleged billing

error.  *Am. Express Co.*, 452 U.S. at 236-37; *see also* § 1666(a).  Chase's procedural violations would have, consequently, occurred at the latest in 90 days from the August 20, 2012 notice, or November 18, 2012.  Plaintiffs had up to November 19, 2013 to file their FCBA claims.  They, instead, waited until December 16, 2013 to file their Complaint.  Therefore, Plaintiffs' §1666(a) claims concerning the alleged $12,000 billing error are time-barred.

Plaintiffs argue that their subsequent notifications of alleged billing errors on September 20, 2012 and January 15, 2013 "arising" from the first notification of alleged billing error "give rise to separate time limits."  (Dkt. No. 13, "Pls' Resp.", at 3.)  Although this court is unaware of any case in this district or the Seventh Circuit that addresses this issue, this court finds Plaintiffs' argument unpersuasive in light of case law from other district and circuit courts, that has held § 1666(a)'s statutory timeframe begins to run "after the creditor [has] transmitted the *first* periodic statement that reflects the alleged billing error." *See, e.g., Dawkins v. Sears Roebuck and Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (citing 12 C.F.R. § 226.13(b)(1)) (emphasis in original); *Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 776 (E.D. Mich. 2002) (stating that there "could not have been . . . any 'continuing' violation by [the defendant] of § 1666(a)'s 30-day and 90-day requirements" as "[the defendant's] procedural violations were complete as of the dates that these deadlines passed"); *Steimel v. Trans Union Corp.*, No. 86-6091, 1988 WL 46247, at *3 (E.D. Pa. May 10, 1988) (substantially similar).

This court agrees with these district courts and circuit courts in holding that the § 1666(a) procedural timeframe begins to run after the creditor has transmitted the first periodic statement that reflects the alleged billing error.  Therefore, Plaintiffs' subsequent notifications of alleged billing errors arising from the first notification of alleged billing errors do not reset the applicable statute of limitations.

2. Tolling Doctrines

The fact these claims are time-barred does not end the court's analysis because the statute of limitations for TILA claims is subject to various tolling doctrines. Plaintiffs explicitly raise the discovery rule in their response (Pls' Resp. at 9) and implicitly assert equitable estoppel in their Complaint (Compl. ¶ 18). The third tolling doctrine is equitable tolling. However, none of these tolling doctrines factually apply to this case.

First, the discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when [the plaintiff] discovers he [or she] has been injured[.]" *Baker v. Wells Fargo Bank*, No. 11-5420, 2012 WL 1886444, at *4 (N.D. Ill. May 23, 2012) (Der-Yeghiayan, J.) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). The discovery rule "is read into statutes of limitations in federal-question cases . . . in the absence of a contrary directive from Congress." *Id.* Tolling under the discovery rule is not applicable here because Plaintiffs discovered their alleged injury on August 16, 2012 when they received the first monthly statement reflecting the alleged billing error. (Compl. ¶ 12.)

Second, equitable estoppel "applie[s] when a plaintiff can show that a defendant took 'active steps to prevent him from suing in time,' and that the plaintiff 'actual[ly] and reasonab[ly] [relied] on the defendant's conduct or misrepresentations.'" *Baker*, 2012 WL 1886444, at *3 (quoting *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006)). Equitable estoppel "presupposes that the plaintiff has discovered . . . that the defendant injured him, and denotes efforts by the defendant – *above and beyond the wrongdoing upon which the plaintiff's claim is founded* – to prevent the plaintiff from suing in time." *Baker*, 2012 WL 1886444, at *3 (quoting *Cada*, 920 F.2d at 451) (emphasis in original). Equitable estoppel tolling is also not

8

applicable here because Plaintiffs failed to allege facts suggesting Chase took active steps, beyond the wrongdoing underlying the FCBA claim, to prevent Plaintiffs from suing in time.

Third, equitable tolling "applie[s] when 'despite all due diligence,' a plaintiff 'is unable to obtain vital information bearing on the existence of his claim.'" *Baker*, 2012 WL 1886444, at *3 (quoting *Chapple v. Nat'l Starch and Chem. Co. & Oil*, 178 F.3d 501, 505-06 (7th Cir. 1999)). Equitable tolling "'is granted sparingly' only when 'extraordinary circumstances far beyond litigant's control . . . prevented timely filing.'" *Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002) (quoting *U.S. v. Marcello*, 212 F.3d 105, 1010 (7th Cir. 2000)). Equitable tolling is also not applicable here because Plaintiffs' Complaint failed to allege facts demonstrating extraordinary circumstances, far beyond Plaintiffs' control, that prevented the timely filing of Plaintiffs' FCBA claim.

## C. Alleged Failure to Send Monthly Statements

Plaintiffs' Complaint also failed to state a claim that Chase violated § 1666(a) for failure to send two billing statements, and as a result, this court dismisses these claims without prejudice to allow Plaintiffs the opportunity to file an amended complaint if appropriate under Rule 11 of the Federal Rules of Civil Procedure. Even assuming that the pending Complaint alleges valid billing errors, the Complaint did not allege that Plaintiffs notified Chase within 60 days after the ending date of the second monthly statement of these alleged billing errors. (Compl. ¶ 23.) Without Plaintiffs' notification, Chase's duties under § 1666(a) were not triggered. *Hill*, 2010 WL 107192, at *6 ("Without a valid and timely notice of billing error, there's no duty to comply with § 1666(a)(A) and (B), and no violation of those sections.").

*D. Alleged Collection from and Closing Plaintiffs' Account*

The court finds that Plaintiffs' §§ 1666(c) and 1666(d) claims are not time-barred. The one-year statute of limitations for Plaintiffs' §§ 1666(c) and 1666(d) claims began to run when Plaintiffs first learned of these violations. *See Dawkins*, 109 F.3d at 243 (stating that "[t]he statute of limitations on [the plaintiff's] Truth-in-Lending Act claims began to run . . . when [the plaintiff] first learned of [the defendant's] actions"). Here, Plaintiffs' Complaint alleges that Chase debited $740.00 from their bank account on November 20, 2012. (Compl. ¶ 25, Ex. D.) Plaintiffs, however, did not learn of Chase's collection until December 16, 2012, when they received the December 2012 monthly statement that reflected the $740.00 debit for the first time. (*Id.* ¶ 28; Pls' Resp. at 7.) Because Plaintiffs filed their Complaint on December 16, 2013, within the one-year statute of limitations, Plaintiffs' § 1666(c) claim is not time-barred. Similarly, Plaintiffs' Complaint's § 1666(d) claim is not time-barred because Plaintiffs did not learn of the closing of their account until Chase closed their account in January 2013. (Pls' Resp. at 6.) Plaintiffs, therefore, filed their Complaint well within the one-year statute of limitations for their § 1666(d) claim.

Chase argues that Plaintiffs' §§ 1666(c) and 1666(d) claims should be time-barred because they are predicated on the § 1666(a) claims, which are time-barred as previously explained. (Def's Mem. at 9-10.) However, the FCBA, as part of TILA, "is a remedial legislation designed to prevent predatory creditor practices." *Langenfeld v. Chase Bank USA, N.A.*, 537 F. Supp. 2d 1181, 1191 (N.D. Okla. 2008) (citations omitted). It must be "construed liberally in favor of the consumer" to avoid harsh results for the consumer. *Id.* at 1197, 1201 n.21 (citation omitted).

Keeping these principles in mind, this court rejects Chase's argument that the Complaint's §§ 1666(c) and 1666(d) claims should be collapsed into a § 1666(a) violation, for purposes of statute of limitations calculation. Were this court to adopt Chase's position, creditors when put on notice of a disputed charge could ignore the notice, wait until the one year statute of limitations had run, and then attempt to collect disputed charges and close accounts containing disputed charges, while avoiding liability for these subsequent §§ 1666(c) and 1666(d) violations. Such a harsh result for consumers cannot be what Congress intended the FCBA to achieve when it was enacted.

Chase's alternative arguments for dismissing Plaintiffs' §§ 1666(c) and 1666(d) claims (Def's Mem. at 11-13; Def's Reply at 4) are equally unpersuasive. Chase argues that its collection of $740.00 to apply to the disputed $12,000 charge was not a billing error under the FCBA. (Def's Mem. at 11; Def's Reply at 4.) However, *pro se* plaintiffs are afforded liberal pleading standards at the motion to dismiss stage. *Titus*, 828 F. Supp. 2d at 966. As long as the initial $12,000 charge reflected on the August 2012 monthly statement could be considered a billing error, then Plaintiffs' Complaint states a claim against Chase for collecting $740.00 against this alleged billing error.

Chase, additionally, argues that the closing of Plaintiffs' account containing the $12,000 charge billing error does not give rise to a § 1666(d) claim because Plaintiffs' account was closed not solely as a result of Plaintiffs' failure to pay the disputed $12,000, but also because of their failure to pay undisputed preexisting balance. (Def's Reply at 4.) This is a factual question that cannot be addressed at the motion to dismiss stage. *Gray*, 743 F.2d at 16 (stating that if the defendant "seeks to avail itself" on the ground that "its cancellation was proper because it was

for reasons other than those prohibited by [§ 1666(d)]," then the defendant has to establish those facts through "substantial evidentiary proceedings").

## 2.  Counts II and III: Alleged Violations of 15 U.S.C. § 1681s-2

### A. Alleged Violations of 15 U.S.C. § 1681s-2(a)

Section 1681s-2(a) "imposes various duties on entities to provide accurate information to [credit reporting agencies] in the initial furnishing, and imposes duties of reasonable investigation after notice of a dispute directly from the consumer[.]" *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966-67 (N.D. Ill. 2005) (Gettleman, J.).  However, as Chase correctly points out (Def's Mem. at 13-14), and as Plaintiffs conceded (Pls' Resp. at 13), there is no private right of action under § 1681s-2(a).  15 U.S.C. § 1681s-2(c) (stating that §§ 1681n and 1681o, the FCRA's civil liability provisions, are inapplicable to violations of §1681s-2(a)); *id.* § 1681s-2(d) (stating that § 1681s-2(a) "shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title"); *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011) ("[A]lthough [the plaintiff's] claim arises under § 1681s-2(a), that section does not create a private right of action.") (citation omitted).

### B.  Alleged Violations of 15 U.S.C. § 1681s-2(b)

Plaintiffs then contend that they made a typographical error by alleging violations of § 1681s-2(a), when they actually meant to allege violations of § 1681s-2(b).  (Pls' Resp. at 13.) Section 1681s-2(b) imposes various duties on entities "to reinvestigate the credit information" after "notice from a credit reporting agency that the information [they have] provided is in dispute[.]" *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 922 (N.D. Ill. 2000) (Pallmeyer, J.).  Unlike § 1681s-2(a), § 1681s-2(b) does provide Plaintiffs a private right of action against

12

Chase. *Dornhecker*, 99 F. Supp. 2d at 927 ("[I]ndividual consumers may bring a cause of action against furnishers [of information] for failing to comply with Subsection (b).").

Chase argues, however, that even under § 1681s-2(b), Plaintiffs still fail to state a claim because they do not allege that Chase ever received the requisite notice from credit reporting agencies to trigger Chase's duties under § 1681s-2(b). (Def's Mem. at 14 n.7.) Plaintiffs respond by arguing that (1) the Complaint contains allegations that they demanded credit reporting agencies delete all allegedly incorrect information Chase provided, and that (2) these allegations are sufficient to state a claim. (Pls' Resp. at 13; Compl. ¶ 51.)

This court considered the pleading standard for § 1681s-2(b) claims in *Jones v. U.S. Bank Nat'l Ass'n*, No. 10-0008, 2011 WL 663087 (N.D. Ill. Feb. 14, 2011). In *Jones*, the defendant also argued that the plaintiff "failed to state a claim for which relief can be granted under 15 U.S.C. § 1681s-2(b), insofar as [the plaintiff] has not alleged 'that . . . any credit reporting agency notified [the defendant] about any challenge[.]'" *Jones*, 2011 WL 663087, at *3. Although the plaintiff in *Jones* conceded this point by failing to respond to the argument, this court granted the defendant's motion to dismiss the FCRA claim. *Id.* (citing *Rollins*, 379 F. Supp. 2d at 967 ("The duties § 1681s-2(b) imposes on furnishers of information arise only after the furnisher is notified pursuant to § 1681i(a)(2) by a consumer credit reporting agency that a consumer challenges information."); *see also Densmore v. Gen. Motors Acceptance Corp.*, No. 03-1866, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003) (Manning, J.) (stating that plaintiffs have to "conduct[] a concrete investigation into whether [defendants'] duties under the FCRA were ever triggered" before "drag[ging] [defendants] into court")).

The majority of other judges in this district who have addressed this issue have required plaintiffs to allege that defendants received the requisite notice from credit reporting agencies in

13

order to survive the motion to dismiss stage. *Dornhecker*, 99 F. Supp. 2d at 928-29 (granting

motion to dismiss without prejudice because the plaintiff did not allege that the defendant

"received notice from a *consumer reporting agency* that the credit information is disputed"

(emphasis in original)); *Rideaux v. Travelers Ins. Co.*, No. 12-2592, 2013 WL 3354462, at *5

(N.D. Ill. July 1, 2013) (Gettleman, J.) (substantially similar); *Pichugin v. Experian Info.

Solutions, Inc.*, No. 11-04375, 2012 WL 527529, at *3 (N.D. Ill. 2012 Fed. 15, 2012) (Coleman,

J.) (substantially similar); *Gulley v. Pierce & Assocs.*, No. 10-573, 2010 WL 5060257, at *4

(N.D. Ill. Dec. 6, 2010) (Kennelly, J.) (substantially similar); *Moline v. Trans Union LLC*, No.

03-1376, 2003 WL 21878728, at *1 (N.D. Ill. Aug. 7, 2003) (Plunkett, J.) (substantially similar).

This court is aware of the non-precedential Seventh Circuit opinion *Lang v. TCF Nat'l

Bank*, 249 F.App'x 464 (7th Cir. 2007), in which the Seventh Circuit reversed another district

court's dismissal of the plaintiff's § 1681s-2(b) claim, holding that plaintiff was not required to

allege that the credit reporting agency notified the defendant of the dispute. *Id.* at 466-67. The

Seventh Circuit offered two reasons for its ruling. First, even after *Twombly*, complaints in

federal courts need only satisfy a notice pleading standard. *Id.* at 466. Second, the plaintiff may

not be in a practical position to allege that the credit reporting agency notified the defendant at

the time of filing the complaint. *Id.* at 467.

In light of more recent case law, however, this court does not find either reason presentd

in *Lang* persuasive. First, in accordance with the Supreme Court's opinions in *Twombly* and

*Iqbal*, complaints in federal courts must "include sufficient facts 'to state a claim for relief that is

plausible on its face.'" *Cole*, 634 F.3d at 903 (quoting *Justice*, 577 F.3d at 771). Without an

allegation that credit reporting agencies notified Chase, Plaintiffs have not alleged sufficient

facts to state that Chase's statutory duties under § 1681s-2(b) have been triggered. *Dornhecker*,

99 F. Supp. 2d at 929 ("Section § 1681s-2(b) triggers a furnisher's duty to investigate allegedly erroneous information when that furnisher has received notice from a *consumer reporting agency* that the credit information is disputed." (emphasis in original)). Second, Plaintiffs could easily ascertain without discovery whether Chase received the requisite notice from credit reporting agencies. *Densmore*, 2003 WL 22220177, at \*2 ("[T]he FCRA expressly provides that a consumer is entitled to receive 'a description of the procedure used to determine the accuracy and completeness of the information . . . including the business name and address of any furnisher of information contacted in connection with such information.'" (quoting 15 U.S.C. § 1681i(a)(6)(A))). Recent district court decisions requiring an allegation of the requisite notice are correct that this "key information" is "easily verif[iable]." *Id.*; *see also Rideaux*, 2013 WL 3354462, at \*5; *Pichugin*, 2012 WL 527529, at \*3; *Gulley*, 2010 WL 5060257, at \*4.

## CONCLUSION

For the reasons set forth above, Chase's "Motion to Dismiss Plaintiffs' Complaint" (Dkt. No. 9) is granted in part and denied in part. Plaintiffs' § 1666(a) claims in Count I for the alleged $12,000 charge billing error, are dismissed with prejudice, because they are time-barred. Plaintiffs' § 1666(a) claims in Count I for Chase's alleged failure to send monthly statements are dismissed without prejudice, because Plaintiffs failed to allege that they provided Chase with timely notice of these alleged billing errors. Plaintiffs' §§ 1666(c) and 1666(d) claims for Chase's collecting on the billing error and closing Plaintiffs' account remain viable, because those claims are separate violations, not collapsed into the § 1666(a) violation for statute of limitations purposes, and consequently not time-barred. Counts II and III are dismissed without prejudice, because Plaintiffs failed to allege that any credit reporting agency notified Chase of the alleged billing errors.

Plaintiffs are given leave to file a First Amended Complaint containing all the allegations Plaintiffs desire to present consistent with this order, the statute of limitations, and Rule 11 by August 25, 2014.  The parties are encouraged to discuss settlement.  The case is set for report on status at 9:00 a.m. on September 2, 2014.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

Date:   July 25, 2014